CASE 0:15-cv-03095-MJD-SER   Document 24   Filed 01/03/17   Page 1 of 9

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

CHRISTOPHER AYALA,

      Plaintiff,

v.                                  **MEMORANDUM OF LAW & ORDER**
                                     Civil File No. 15-3095 (MJD/SER)

AEROTEK, INC.,

      Defendant.

Richard Thomas Jellinger, Jellinger Law Office, Counsel for Plaintiff.

Stephanie D. Sarantopoulos and Joseph D. Weiner, Littler Mendelson, PC, Counsel for Defendant.

## I.    INTRODUCTION

This matter is before the Court on Defendant's Motion to Enforce Settlement Agreement. [Docket No. 14] The Court heard oral argument on October 7, 2016.

## II.    BACKGROUND

### A.    Factual Background

Plaintiff Christopher Ayala was employed by AECOM/GSS, Ltd. as a safety coordinator for a one-year contract beginning in April 2013. (Compl. ¶ 8.)

Plaintiff's assigned work location for the term of his employment was in Afghanistan. (Id. ¶ 9.)

Defendant Aerotek, Inc., ("Aerotek") is a staffing company with office locations in Minnesota. (Compl. ¶¶ 5-6.) Aerotek offers contract-to-hire opportunities for applicants and places applicants with a client employer, which may offer permanent employment to the applicant at the end of the contract. (Id. ¶ 6.)

On or about October 15, 2013, Aerotek emailed Ayala regarding contract-to-hire employment. (Compl. ¶ 10.) After negotiations with Aerotek, Ayala resigned from his job in Afghanistan and incurred travel expenses to travel to Minnesota for a new job with Aerotek. (Compl. ¶¶ 11-20, 23.) However, ultimately, Aerotek informed Ayala that the position they had discussed was no longer available but that positions paying less money with no guarantee of hours might become available. (Id. ¶¶ 20-22, 24-26.)

 B. **Procedural History**

  1. **The Current Lawsuit**

On June 26, 2015, Ayala commenced a lawsuit against Aerotek in Ramsey County District Court. (Notice of Removal ¶ 1.) His Complaint alleges Count 1: Violations of Minnesota Statute Sections 181.64–.65, Count 2: False Inducement of

Employment, Count 3: Negligent Representation, and Count 4: Promissory Estoppel.  On July 20, 2015, Defendant removed the case to this Court based on diversity jurisdiction.

### 2.     Settlement Negotiations

In an attempt to settle the lawsuit, on March 7, 2016, Defendant's counsel, Stephanie Sarantopoulos, sent Plaintiff's counsel, Richard Jellinger, a settlement offer via email.  (Sarantopoulos Decl. ¶ 2; Sarantopoulos Decl., Ex. A.)  She also communicated the same settlement offer in a voicemail for Jellinger.  (Sarantopoulos Decl. ¶ 2.)  The email stated that Aerotek was willing to settle the matter for a specific amount of money in exchange for a general release of the claims in a confidential settlement agreement.  (Sarantopoulos Decl., Ex. A.)  Sarantopoulos advised Jellinger that the offer would remain open until March 11, 2016.  (Id.)

After receiving no response from Plaintiff's counsel, on May 12, 2016, Sarantopoulos called him again to discuss the settlement offer and the case in general.  (Sarantopoulos Decl. ¶ 3.)  Jellinger informed her that he did not receive the settlement offer because his email address had changed.  (Id.)  Given the communication issue, Sarantopoulos offered to hold the settlement offer open

until Jellinger could relay the offer to Ayala. (Id.) On May 12, she then forwarded a copy of the previous email settlement offer to Jellinger's new email address. (Id. ¶ 4; Id., Ex. B.)

On May 26, 2016, Jellinger and Sarantopoulos discussed the settlement offer via telephone. (Sarantopoulos Decl. ¶ 5.) Plaintiff's counsel stated he was having difficulties reaching Ayala, but would respond to the offer shortly. (Id.) On June 3, 2016, Jellinger contacted Sarantopoulos to communicate a counteroffer on behalf of Ayala. (Id. ¶ 6.) The counteroffer only increased the monetary amount; no other material changes were made. (Id.)

On or about June 4, 2016, Sarantopoulos spoke to Jellinger by telephone and accepted Plaintiff's counteroffer. (Sarantopoulos Decl. ¶ 7.) She stated that she would memorialize the agreement in writing and forward it to him. (Id.) In the meantime, she reminded Jellinger that because of the settlement, Ayala's confidentiality obligations began immediately. (Id.) Jellinger stated he and his client understood. (Id.) On June 8, 2016, Sarantopoulos sent Jellinger the written settlement agreement, with the settlement amount as set forth in the counteroffer, as well as a Stipulation of Dismissal to be executed and held in trust

pending his receipt of the settlement proceeds.  (Id. at ¶ 8; Sarantopoulos Decl., Ex. C.)

Approximately a week passed before Sarantopoulos called Jellinger to inquire about the status of the written settlement agreement.  (Sarantopoulos Decl. ¶ 9.)  He stated that he was having communication issues with his client and would follow up soon.  (Id.)  On June 20, 2016, Jellinger called Sarantopoulos and advised that Ayala no longer wished to settle the claims.  (Id.)  Further, Jellinger stated that Ayala was now working in Africa and would be unavailable to appear for a deposition until August.  (Id. ¶ 10.)  Jellinger expressed an interest in obtaining a continuance from the Court or stipulating to dismiss without prejudice.  (Id.)  Sarantopoulos explained that she would relay this information to her client; however, Aerotek would likely seek to enforce the settlement agreement.  (Id.)

The following day, Sarantopoulos received a letter from Jellinger stating that Ayala "has declined the proposed settlement."  (Sarantopoulos Decl., Ex. D.)  On June 23, 2016, the parties' counsel spoke via telephone.  (Sarantopoulos Decl. ¶ 12.)  During this call, Sarantopoulos advised Jellinger that Aerotek would be filing a motion to enforce the settlement agreement.  (Id.)  He advised that he

would contact his client, but expected to have some difficulty reaching him in Africa. (Id.) On June 27, Jellinger sent Sarantopoulos a letter stating that he had communicated with Ayala and that Ayala "continues to reject the settlement and wishes to proceed with the lawsuit." (Sarantopoulos Decl., Ex. E.)

### 3. The Current Motion

On July 18, 2016, Aerotek filed the current Motion to Enforce Settlement. [Docket No. 14] Ayala filed no written opposition, but Jellinger did appear and argue at oral argument.

## III. DISCUSSION

### A. Standard for Enforcing a Settlement Agreement

A district court possesses inherent authority to enforce a settlement agreement as a matter of law when the terms of the agreement are unambiguous. Barry v. Barry, 172 F.3d 1011, 1013 (8th Cir. 1999). In the instance of a diversity case, the settlement agreement must be construed in accordance with state law. Id. In Minnesota, settlement agreements are created and enforced according to contract principles. Ryan v. Ryan, 193 N.W.2d 295, 297 (Minn. 1971). "The district court has considerable discretion in determining the procedure appropriate to a motion to compel settlement, and a hearing need be held only if

there are substantial questions of fact that are not already a matter of record." Barry, 172 F.3d at 1013.

A valid settlement contract requires offer and acceptance so as to constitute a meeting of the minds on the material terms of the contract. Ryan, 193 N.W.2d at 297. "Minnesota follows the objective theory of contract formation, under which an outward manifestation of assent is determinative, rather than a party's subjective intent." TNT Properties, Ltd. v. Tri-Star Developers LLC, 677 N.W.2d 94, 102 (Minn. Ct. App. 2004). In addition, in Minnesota, a counteroffer is treated simultaneously as a rejection of the original offer and a subsequent new offer. Jackson v. Fed. Reserve Employee Ben. Sys., No. 08-4873 (DSD/FLN), 2009 WL 2982924 at *3 (D. Minn. Sept. 14, 2009) (citing Alpha Venture/Vantage Props. v. Creative Carton Corp., 370 N.W.2d 649, 652 (Minn. Ct. App. 1985)).

"A court may enforce a settlement agreement that contemplates the execution of documents at a later time, leaves insubstantial matters for later negotiation and/or that does not expressly resolve ancillary issues." Jackson, 2009 WL 2982924 at *4 (citations omitted). See also Schumann v. Northtown Ins.

Agency, Inc., 452 N.W.2d 482, 483 (Minn. Ct. App. 1990). ("[A] written agreement is not a prerequisite to the enforcement of a settlement").

### B. Existence of an Enforceable Settlement Agreement

Aerotek's written settlement offer was unambiguous and included the agreement's material terms: payment of a sum certain in exchange for a general release of claims in a confidential settlement agreement. Ayala extended an unambiguous counter-offer that increased the monetary amount, but made no changes to the other material terms. Aerotek accepted Ayala's counter-offer and provided a final written agreement. Based on the actions by both parties, there was a meeting of the minds on the material terms of the agreement: Defendant promised to pay the agreed upon monetary value, Plaintiff promised to dismiss the pending claims, and the parties promised to keep the terms of the settlement confidential. The agreement shows completed negotiations between the parties and no disagreement about the terms.

Furthermore, Plaintiff's actions show that he intended to be bound by the terms of the agreement. Through Jellinger, he rejected Aerotek's initial settlement offer and conveyed a counteroffer. Jellinger has never contended that he did not have authority to settle the claim on his client's behalf. He repeatedly represented that he could not respond until he had communicated with his client

and obtained his wishes.  Then, when Jellinger did respond, he represented that he was conveying Ayala's desires.  Once Jellinger was provided with the written settlement agreement and Stipulation of Dismissal, he at no time indicated that an agreement had not been reached or objected to any term of the agreement.  He represented that he and Ayala understood that the confidentiality obligations began immediately.  When Ayala ultimately refused to sign the written agreement, Jellinger told Aerotek that Ayala had changed his mind and no longer wished to settle his claims.  Ayala's change of heart and refusal to sign the formal written agreement does not change the fact that an enforceable agreement exists.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1. Defendant's Motion to Enforce Settlement Agreement [Docket No. 14] is **GRANTED**.

2. The parties shall abide by the terms of the settlement agreement agreed to by the parties on June 4, 2016, and reduced to writing on June 8, 2016, and attached as Exhibit C to the Declaration of Stephanie Sarantopoulos.


Dated:  January 3, 2017            s/ Michael J. Davis
                                   Michael J. Davis
                                   United States District Court